<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                :
LAMAR CALDWELL,                 :
                                :        Civil Action No.
              Petitioner,       :        11-cv-5153 (RBK)
                                :
         v.                     :
                                :
J.T. SHARTLE,                   :        **MEMORANDUM**
                                :        **OPINION**
              Respondent.       :
_____:

**KUGLER**, District Judge:

     This matter comes before the Court upon petitioner Lamar
Caldwell's ("Petitioner") filing of a habeas petition
("Instant Petition"), pursuant to 28 U.S.C. § 2241, <u>see</u> Docket
Entry No. 1, and his application to proceed in this matter
<u>in</u> <u>forma</u> <u>pauperis</u>.  <u>See</u> Docket Entry No. 2.  For the reasons
expressed below, the Court will grant Petitioner <u>in</u> <u>forma</u>
<u>pauperis</u> status[1] and will dismiss his Instant Petition.

_____

     [1] Pursuant to Local Civil Rule 54.3(a), the filing fee is
required to be paid or IFP status must be sought at the time the
petition is presented for filing.  However, if the petitioner's
institutional account shows a balance that exceeds $200, the
petitioner shall not be considered eligible to proceed IFP.  <u>See</u>
Local Civil Rule 81.2(c).  Here, Petitioner's prison account
shows 6-month deposit of $772.18.  <u>See</u> Docket Entry No. 2, at 3.
Yet, the same document shows the end balance of $56.96.
Therefore, while noting its substantial concern with Petitioner's
current <u>in</u> <u>forma</u> <u>pauperis</u> application, the Court finds it
warranted to grant Petitioner <u>in</u> <u>forma</u> <u>pauperis</u> status for the
purposes of this action.

1.   Petitioner "was convicted by jury trial . . . of one count
     of possession of a fire arm by a convicted felon.  On June
     16, 1995, he was sentenced [by the United States Court for
     the Eastern District of Pennsylvania ("EDPA")] to serve a
     term of 250 months."[2]  United States v. Caldwell, 1997 U.S.
     Dist. LEXIS 6194, at *1 (E.D. Pa. Apr. 29, 1997).
     Petitioner appealed his conviction and sentence, and the
     United States Court of Appeals for the Third Circuit ("Court
     of Appeals") affirmed the determinations made by the EDPA,
     see United States v. Caldwell, 77 F.3d 464 (3d Cir. 1996);
     Petitioner's application for certiorari was denied.  See
     Caldwell v. United States, 523 U.S. 1085 (1998).

2.   On October 4, 2005, Petitioner filed a § 2241 petition
     ("2005 Petition") in this District.[3]  See Caldwell v. Miner
     ("Caldwell-I"), Civil Action No. 05-4972 (RBK) (D.N.J.).  In
     his 2005 Petition, Petitioner asserted that the Bureau of
     Prisons ("BOP") erred in denying his request for nunc pro
     tunc "credit."  See Caldwell-I, Docket Entry No. 1.  This
     Court, therefore, directed the respondent named in Caldwell-

_____

     [2] By the time of his EDPA conviction underlying Petitioner's
burglary in the State of New Jersey and, in addition, of three
other separate felonies.  See Caldwell, 1997 U.S. Dist. LEXIS
6194, at *2-4.

     [3] Following his conviction, Petitioner instituted a
multitude of actions in the EDPA, this District and the Court of
Appeals; however, a full roster of these actions is as lengthy as
it is unnecessary for the purposes of the Court's analysis.

I to show cause as to why the 2005 Petition should not have been granted.  See id., Docket Entries Nos. 3 and 4.  The respondent duly complied, see id., Docket Entry No. 7; upon examination of the respondent's answer, this Court concluded that the BOP did not violate Petitioner's rights.  See id., Docket Entries Nos. 10 and 11.  Explaining the rationale of its decision to Petitioner, this Court first detailed the relevant background, stating as follows:

> Petitioner is currently serving his 250 month federal sentence rendered in June of 1995 by Judge Weiner, and Petitioner's projected release date, as it stands now, is August 31, 2022.  Prior to starting his federal sentence, Petitioner has finished serving his state sentence; the offense underlying Petitioner's federal sentence was entirely unrelated to the one underlying his state sentence.[4]  During his incarceration with state charges pending, Petitioner was produced in the federal court under a writ of habeas corpus ad prosequendum and sentenced by Judge Weiner to the federal sentence that Petitioner is currently serving.[5]  Following his federal sentenc[ing], Petitioner was returned to state custody and, on June 19, 1995, was sentenced by the State of Pennsylvania to 7 1/2  to 15 years to run concurrently with his federal sentence. Petitioner proceeded to serve his state sentence; after serving the state sentence and being transferred to federal custody to serve his federal term, Petitioner submitted a request to

---

[4] The latter took place on November 18, 1994, when Petitioner was arrested by a Philadelphia police officer and charged with numerous Pennsylvania offenses.

[5] Although Judge Weiner's judgment was silent with regard to whether the federal sentence was to be served concurrent with or consecutive to Petitioner's potential state sentence, Judge Weiner was made aware of Petitioner's then pending state charges.

credit his federal sentence with all the time he had spent in the state custody.  The BOP interpreted the request as one seeking a <u>nunc pro tunc</u> designation.[6]  As Respondent has clarified . . . , following Petitioner's request, on October 7, 2004, the BOP's Regional Inmate Systems Administrator wrote to the sentencing Judge Weiner asking the Judge for recommendation as to whether Petitioner's federal sentence should be served concurrent with Petitioner's state sentence. Although Judge Weiner did not respond to the inquiry,[7] a representative of the prosecutor's office (who was served with an analogous inquiry in accordance with P.S. 5160.05) responded to the BOP by stating that (1) Judge Weiner had expressed his objection to concurrency, and (2) that the prosecutor's office also objected to concurrency of service since Petitioner had never accepted responsibility for the federal offence or asked for concurrent sentences, and since Petitioner's state offenses were separate from and unrelated to those underlying Petitioner's federal offense. After evaluating Petitioner's criminal record, the goals of the criminal justice system, assessing what could have been the intent of Judge Weiner and that put on the record by the prosecutor's office, the BOP denied Petitioner's request for a <u>nunc pro tunc</u> designation.

<u>Caldwell v. Miner</u>, 2006 U.S. Dist. LEXIS 45735, at *3-7

---

[6] <u>Nunc pro tunc</u> designation under the BOP Program Statement ("P.S.") 5160.05 provides guidance as to whether a state institution could be designated for concurrent service of a federal sentence and indicates that such designation should be consistent, inter alia, with the intent of the federal sentencing court and the goals of the criminal justice system.  <u>See</u> P.S. 5160.05.  Information considered under the P.S. includes relevant judgment and orders, state sentencing records and any other pertinent sentencing information, including any statements indication the positions of the sentencing court, the prosecutor and the probation office.  <u>See</u> <u>id.</u>

[7] Judge Weiner passed away on November 9, 2005, a year and one month after the BOP's inquiry at issue.  <u>See</u> 5-5 Mealey's Asb. Bankr. Rep. 17, Vol. 5, Issue 5 (Dec. 2005).

(D.N.J. June 30, 2006) (citations to docket entries and quotation marks omitted; all footnotes in original).  Upon providing the aforesaid factual summary, the Court denied Petitioner's 2005 Petition, explaining:

> "[M]ultiple terms of imprisonment imposed at different times [are presumed to] run consecutively unless the Court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a).  Notably, a federal court's authority to order that terms of imprisonment imposed at different times shall run concurrently is limited to cases in which the federal term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment. See id. If a state sentence has not yet been imposed, a federal court cannot order that its term of imprisonment shall run concurrently with a term of imprisonment that may, hypothetically, be imposed in the future with respect to pending state charges. See Barden v. Keohane, 921 F.2d at 484 ("the sentencing court not only was unable to order concurrency because it sentenced [defendant] before the state did but was actually powerless to do so").  Since, in Petitioner's case, there was no pending state sentence at the time Petitioner's federal sentence was imposed, Judge Weiner had no authority to order the federal sentence to run concurrently to a state sentence that might be imposed in the future.  The BOP, however, in the exercise of its discretion, has authority to designate as a place of federal confinement, nunc pro tunc, the facilities in which Petitioner served his state sentence, see 18 U.S.C. § 3621(b); Barden, 921 F.2d at 480-83, and the BOP's decision to grant or deny nunc pro tunc designation is subject to judicial review only for the purposes of abuse of discretion. See Barden, 921 F.2d at 478. Pursuant to BOP Program Statement 5160.04, (1) "[a]ppropriate state institutions will be designated for service of federal sentences when such actions are in compliance with applicable statutes, court orders or recommendations, and the goals of the criminal justice system"; and (2) if the federal judgment

was imposed first and, hence, there was no
recommendation regarding concurrent or consecutive
service of the sentences, the BOP shall make an
inquiry with the federal sentencing court as
whether the court has any preferences with regard
to nunc pro tunc designation.  As it is clear from
the evidence presented to this Court, the BOP duly
sought relevant information from both the
prosecutor and sentencing court.  The prosecutor
noted his objection and the federal court could –
but declined – to address the issue.  The BOP also
considered Petitioner's criminal record and the
interests of justice.  Therefore, this Court finds
that, under such circumstances, (1) it was not an
abuse of discretion for the BOP to conclude that
the statutory preference for consecutive sentences
should control and, hence, deny Petitioner nunc
pro tunc designation, and (2) BOP's multi-factor
evaluation of Petitioner's nunc pro tunc
application comported with the letter and the
spirit of the decision by the United States Court
of Appeals for the Third Circuit in Woodall v.
Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir.
2005).

Id. at *8-10 (citations to docket entries and footnotes

omitted).

3.    The Court, therefore, dismissed the 2005 Petition; the

Court's decision to that effect was entered on July 6, 2006.

See Caldwell-I, Docket Entries Nos. 10 and 11.  Twelve days

later, Petitioner filed a motion seeking reconsideration of

the Court's determination.  See id., Docket Entry No. 12.

In his motion, Petitioner asserted that the EDPA unduly

enhanced his sentence.[8]  See id.  The Court denied

_____

[8] The Court's Caldwell-I decision, which reconsideration
Petitioner was seeking at the time, had already explained to
Petitioner that his challenges to his conviction and sentence
could not be brought under § 2241.  See Caldwell v. Miner, 2006

Petitioner's motion, pointing out that Petitioner's new
assertions were unrelated to the issues adjudicated in
Caldwell-I and, in any event,

> Under the threshold cases on Petitioner's matter,
> Woodall v. Fed. Bureau of Prisons, 432 F.3d 235
> (3d Cir. 2005), and Barden v. Keohane, 921 F.2d
> 476 (3d Cir. 1990), the BOP merely had to seek the
> thoughts of the sentencing judge, *but neither had*
> *to obtain them* (if the judge did not respond to
> BOP's inquiry), *nor to follow them*.  See Woodall,
> 432 F.3d at 239; Barden, 921 F.2d at 483 (same).
> Since it is not disputed that the BOP actually
> made a proper inquiry with Petitioner's sentencing
> judge, the fact that the BOP was unable to obtain
> any statements "on the record" from Petitioner's
> sentencing judge neither renders the BOP's
> decision improper not qualifies Petitioner for the
> interpretation of judicial silence that Petitioner
> desires.  See id.

Caldwell v. Miner, 2006 U.S. Dist. LEXIS 58494, at *5, n. 2
(D.N.J. Aug. 7, 2006).

4.   Petitioner appealed this Court's Caldwell-I decision.  See
Caldwell-I, Docket Entries Nos. 16 and 17.  On May 8, 2007,
the Court of Appeals affirmed this Court's determination,
stating, "[f]or substantially the reasons stated by the
District Court in its opinion of July 6, 2006, we conclude
that Appellant has failed to demonstrate that he is entitled

_____

U.S. Dist. LEXIS 45735, at *11, n. 8 ("Since Petitioner already
filed his § 2255 motion, see United States v. Caldwell, 1997 U.S.
Dist. LEXIS 6194 (E.D. Pa. Apr. 29, 1997), [such challenges]
could be addressed by Petitioner's federal sentencing court only
if the Court of Appeals for the Third Circuit authorizes
Petitioner to proceed with a second/successive motion under 28
U.S.C. § 2255").

to habeas relief.  We therefore dismiss the foregoing appeal pursuant to 28 U.S.C. § 1915(e)(2)."  Id., Docket Entry No. 20.

5.    One month after the Court of Appeals's affirmance of this Court's Caldwell-I decision, Petitioner initiated another action; that new proceeding was commenced at the Court of Appeals.[9]  See In re Caldwell, 229 Fed. App'x 194 (3d Cir. 2007).  Describing that proceeding, the Court of Appeals stated as follows:

> Pro se petitioner Lamar Caldwell . . . filed a petition for writ of mandamus in this Court on June 8, 2007.  . . .  [I]t appears that Caldwell would like this Court to order District Judge Stewart Dalzell . . . of the Eastern District of Pennsylvania, who presided over his 28 U.S.C. § 2254 petition for writ of habeas corpus, to assume jurisdiction over [Caldwell-I], which Caldwell filed in the District of New Jersey, and which is closed.  As we have no legal authority to issue such an order, Caldwell has no right, much less a "clear and indisputable" right, to issuance of [such mandamus] writ. [See] Madden v. Myers, 102 F.3d 74, 79 (3d Cir. 1996).  [T]o the extent that Caldwell seeks to appeal from a decision in District of New Jersey [in Caldwell-I], we note that he has already appealed [that decision], and that we dismissed his appeal on April 19, 2007, under 28 U.S.C. § 1915(e)(2).

> Id. at 194-95.

_____

[9] Petitioner has numerous aliases; therefore, certain Petitioner's actions commenced with the EDPA and the Court of Appeals reflect these aliases.  Petitioner's Caldwell-II matter was one of the proceedings where the EDPA acknowledged some of Petitioner's aliases, while the Court of Appeals acknowledged others.

6.    Three years passed by and, on April 9, 2010, Petitioner
      submitted a new application to the EDPA; that application
      was titled "Request to file a Nunc Pro Tunc Petition."  See
      USA v. Caldwell ("Caldwell-II"), Crim. Action Construed as
      Civil No. 95-0070 (SD) (EDPA), Docket Entry No. 63.  That
      proceeding was assigned to Honorable Stewart Dalzell ("Judge
      Dalzell"), that is, the Judge who, after Judge Weiner's
      death, presided over Petitioner's § 2254 challenge to
      Petitioner's state conviction.  While the procedural history
      of the Caldwell-II action is too lengthy to be replicated in
      the instant matter, it warrants noting that, after receiving
      a multitude of Petitioner's motions for reconsideration,
      Judge Dalzell eventually issued a detailed order summarizing
      the Caldwell-II events as follows:

      (a)   On March 21, 1995, Caldwell was convicted . . . of
            possession of a firearm by a convicted felon, and
            on June 16, 1995, the Hon. Charles R. Weiner
            sentenced Caldwell to 250 months imprisonment . .
            . ;
      (b)   Three days later, the Hon. Isaac S. Garb, Jr. of
            the Bucks County Court of Common Pleas sentenced
            Caldwell to seven and a half to fifteen years
            imprisonment after Caldwell pled guilty to four
            counts of burglary, with Judge Garb recommending
            that Caldwell's state sentence run concurrently
            with his federal sentence;
      (c)   Because the imposition of Caldwell's federal
            sentence preceded his state sentencing, Judge
            Weiner was silent as to whether the two sentences
            should run concurrently or consecutively;
      (d)   On April 9, 2010, Caldwell filed a "request to
            file a nunc pro tunc petition," and on July 14,
            2010, Caldwell's trial counsel and the Government
            submitted a letter to the Court agreeing that "the

Court, if so inclined, may recommend to the Bureau of Prisons that a nunc pro tunc designation for concurrent service is appropriate";

(e) We consequently granted Caldwell's request on July 14, 2010 and amended the June 16, 1995 [sentencing judgment by] add[ing] a recommendation that the Bureau of Prisons "DESIGNATE nunc pro tunc SCI-Cresson as the facility where the defendant began service of his federal sentence";

(f) On October 28, 2010, Caldwell filed a pro se "letter motion" with the Court explaining that the Bureau "believe[d] they have the sole authority to make a nunc pro tunc designation for concurrent sentencing and refuse to at hear [sic] to your Honor's order," leading Caldwell to ask "that this court exercise it's [sic] authority under 18 U.S.C. § 3584(a) in which [sic] gives the court authority to impose a concurrent sentence";

(g) On November 15, 2010, we received a letter from Henry J. Sadowski, Regional Counsel for the Federal Bureau of Prisons, enclosing a September 2, 2010 letter from Jose A. Santana, Chief of the Designation and Sentence Computation Center;

(h) Santana's letter explained that on November 22, 2004, in the course of reviewing Caldwell for a nunc pro tunc designation, the Bureau of Prisons sought input from this Court;

(i) In response to the Bureau's inquiries, the United States Attorney's Office submitted a letter explaining that

> The Court and the parties were well aware at the time of [Caldwell's] sentencing that he had a completely unrelated felony case awaiting resolution in the county.  At no time did the defendant request a ruling that his sentence be order [sic] to run concurrent to that future sentence.  Even if possible, neither the Court nor the government would have agreed.

(j) As a consequence, according to Santana, "[b]ased on Mr. Caldwell's instant offense; his past criminal history; and the Court's input at the time, Mr. Caldwell was denied a nunc pro tunc designation" by the Bureau of Prisons;

(k) Santana further explained that "[b]ased on your order dated July 14, 2010, Mr. Caldwell was once

again reviewed.  Unfortunately, based on all factors reviewed he was once against denied a nunc pro tunc designation";

(l)  We denied Caldwell's motion on December 15, 2010, "for the reasons set forth in Regional Counsel's November 15, 2010 letter to the Court, and the enclosures therein," and Caldwell then filed a pro se motion for reconsideration on February 7, 2011 seeking the opportunity to examine and respond to the letter that we cited, which he did on February 22, 2011;

(m)  In his response, Caldwell argues that ([i]) the U.S. Attorney's November 22, 2004 letter "is irrelevant at this point and time, in light of the United States Attorney recent decision in the July 14, 2010, letter"; ([ii]) "[t]he late Judge Wiener [sic] never made any recommendation or opinion on record as to this matter"; and ([iii]) "28 U.S.C. § 1738, requires the Federal Courts to give full faith and credit to a State Court decision";

. . .

(o)  Because Caldwell has demonstrated [no valid basis for reconsideration of Judge Dalzell's prior decision denying his letter motion], we will deny his motion for reconsideration, though we will take this opportunity to explain in greater detail why we cannot grant the relief that Caldwell's October 28, 2010 motion seeks;

(p)  As our Court of Appeals explained in Barden v. Keohane, 921 F.2d 476, 479 (3d Cir. 1990), the Bureau of Prisons has the "power to have a state facility designated nunc pro tunc as a place of federal confinement where [a defendant] could gain credit against his federal sentence for the time he served there," and a defendant "is entitled to 'fair treatment' on his application for nunc pro tunc designation of the state facility as the place of confinement for his federal sentence," id. at 483;

(q)  18 U.S.C. § 3621(b) provides that the Bureau should consider five factors in designating "the place of the prisoner's imprisonment," including "any statement by the court that imposed the sentence ([i]) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or ([ii]) recommending a type of penal or correctional facility as appropriate";

(r)  "It is also clear, however, that the views of the

sentencing judge are 'not controlling' for purposes of the BOP's designation.  Only the BOP, as a delegate of the Attorney General, has the authority to make this designation," <u>United States v. Allen</u>, 124 Fed. App['x] 719, 721 (3d Cir. 2005);

(s)   Moreover, "[w]hile a state court may express its intent that a defendant's state sentence run concurrently with a previously imposed federal sentence, this intent is not binding on federal courts or the BOP," <u>Allen v. Nash</u>, 236 Fed. App['x] 779, 784 (3d Cir. 2007) (citing <u>Barden</u>, 921 F.2d at 476);

(t)   At the same time, 18 U.S.C. § 3584(a) provides that

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively.  Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(u)   However, while our Court of Appeals has not yet ruled squarely on "whether a district court may order a sentence to run consecutively to a sentence a state court has not yet imposed," <u>United States v. Randolph</u>, 80 Fed. App['x] 190, 193 (3d Cir. 2003), the Court of Appeals has suggested that a federal sentencing court is "actually powerless" to order concurrency when it sentences a defendant "before the state," <u>Barden</u>, 921 F.2d at 483-84, and other courts from this Circuit have similarly held that "[a] district court has no authority to make a sentence either concurrent or consecutive to a state sentence that has not been imposed," <u>United States v. McBride</u>, 2000 WL 13868029, at *2 (E.D. Pa. 2000); <u>see also</u> <u>United States v. Smith</u>, 101 F. Supp. 2d 332, 346 (W.D. Pa. 2000) ("[T]his Court concludes that it has, and had, no authority to

apply 18 U.S.C. § 3584(a) or U.S.S.G. § 5G1.3 to direct that petitioner's federal sentence run concurrent to the two state sentences that were anticipated at the time of sentencing but not yet imposed"); <u>Brown v. Grondolsky</u>, 2010 WL 2667427, at *3 (D.N.J. 2010) ("Where a state sentence has not yet been imposed, a federal court has no authority to order that its term of imprisonment shall run concurrently with a term of imprisonment that may be imposed in the future with respect to pending state charges");

(v) A defendant serving a sentence for a state conviction that was imposed after a federal sentence, then, may have his sentences run concurrently only if the Bureau of Prisons, after considering the factors in § 3621(b), makes a nunc pro tunc designation of the state prison as the place of the defendant's federal confinement – importantly, this is not accomplished through § 3584(a);

(w) Moreover, a Court may not use § 3584 as a vehicle to revisit its decision not to impose concurrent sentences;

(x) As Judge Bloch explained in <u>United States v. Kelly</u>, 2009 WL 5173500, at *1 (W.D. Pa. 2009),

> [N]either Section 3584 nor Section 3585 of Title 18 of the United States Code provides jurisdiction for the Court to 'adjust' a sentence.  Federal Rule of Criminal Procedure 35(a) and 18 U.S.C. § 3582(c)(1)(B) permit the Court to correct a sentence that resulted from arithmetical, technical, or other clear error, but such a correction must be made within [fourteen] days of sentencing.  Rule 36 permits the Court to correct a clerical error at any time.  It is not clear that what Petitioner is asking the Court to do fits within the scope of either of these rules . . .

(y) Finally, while a prisoner may challenge the Bureau's decision not to designate a state institution as the place of a prisoner's federal confinement, "habeas as authorized by 18 U.S.C. § 2241 is an appropriate judicial means of compelling that examination," <u>Barden</u>, 921 F.2d at 483, and "resolution of [this] issue is a matter within the Bureau's sound discretion," <u>Alvarez v.</u>

<u>Schultz</u>, 312 Fed. App['x] 495, 497 (3d Cir. 2009)
(internal quotation marks omitted);

(z)   Thus, "[i]nsofar as the BOP reviewed [a
      prisoner's] request for nunc pro tunc credit, and
      considered the factors enumerated in § 3621(b),
      our review is limited to whether the BOP abused
      its discretion," <u>Galloway v. Warden of F.C.I. Fort
      Dix</u>, 385 Fed. App['x] 59, 62 (3d Cir. 2010);

. . .

(bb)  If we instead construe Caldwell's "letter motion"
      as a petition for habeas corpus pursuant to 28
      U.S.C. § 2241 challenging the Bureau of Prisons'
      refusal to designate his state prison nunc pro
      tunc as the place of his federal confinement, we
      may reverse this determination only if the Bureau
      of Prisons abused its discretion in making it;

(cc)  The Bureau's July 22, 2010 decision makes clear,
      however, that the Bureau considered each of the
      five factors listed in § 3621(b) and rejected
      Caldwell's nunc pro tunc request because of the
      "nature and circumstances of the offense" and "the
      history and characteristics of the prisoner,"
      notwithstanding the fact that "the current Judge
      is making a recommendation for concurrency";

(dd)  Caldwell's arguments regarding ([i]) the
      irrelevancy of the United States Attorney's 2004
      opposition to his nunc pro tunc request, ([ii])
      Judge Weiner's failure to register an opinion as
      to that original request, and ([iii]) the state
      court's recommendation of concurrency do not
      suggest that the Bureau abused its discretion in
      denying his most recent nunc pro tunc request, and
      in any event given the Bureau's reasoned decision
      we cannot conclude that its decision constituted
      an abuse of discretion;

(ee)  While we regret that the Bureau of Prisons did not
      follow our recommendation that Caldwell's state
      prison be designated as the place of his federal
      confinement, we cannot . . . invalidate the
      Bureau's determination pursuant to 28 U.S.C. §
      2241; and

(ff)  We will consequently deny Caldwell's motion for
      reconsideration . . . .

<u>Caldwell-II</u>, Docket Entry No. 70, at 1-11 (footnotes and

citations to docket entries omitted).

7.   Therefore, Petitioner's application to Judge Dalzell seeking
     an order directing the BOP to designate, <u>nunc pro tunc</u>,
     Petitioner's place of state confinement as his place of
     federal confinement on the basis of the fact that Judge
     Dalzell merely recommended such designation, was denied.
     Judge Dalzell's order to that effect was entered on April
     27, 2011, and it prompted Petitioner's immediate application
     to Judge Dalzell seeking "additional findings" and
     reconsideration of Judge Dalzell's determination.  <u>See</u>
     <u>Caldwell-II</u>, Docket Entry No. 71.  Upon having Judge Dalzell
     deny his latest application, Petitioner appealed Judge
     Dalzell's decision to the Court of Appeals.  <u>See</u> Docket
     Entries Nos. 72, 73 and 74.  On July 28, 2011, the Court of
     Appeals dismissed Petitioner's appellate challenges stating,
     "[f]or substantially the reasons given by [Judge Dalzell],
     we summarily affirm [Judge Dalzell's] orders."  <u>USA v.</u>
     <u>Caldwell</u>, USCA Index No. 11-2376.  The Court of Appeals'
     mandate to that effect was issued on September 6, 2011.[10]
     <u>See</u> <u>id.</u>

8.   Just two days later, that is, on September 8, 2011,
     Petitioner commenced the instant proceeding.  <u>See</u> Instant
     Matter, Docket Entry No. 1.  In his Instant Petition,

---

[10] Petitioner's application for rehearing was denied by the
Court of Appeals on August 26, 2011.

Petitioner raised challenges substantively identical to those addressed, in great detail, by Judge Dalzell. Specifically, just as in his Caldwell-II proceedings, Petitioner now argues to this Court that the BOP violated his rights: (a) by not following Judge Dalzell's non-binding-upon-the-BOP recommendation to designate, nunc pro tunc, Petitioner's place of state confinement as Petitioner's place of confinement for the purposes of his current federal sentence; and (b) by not giving "full faith and credit" to the non-binding-on-the-BOP decision entered by Petitioner's state court. See id. In other words, the Instant Petition invites this Court to "re-adjudicate" Petitioner's challenges already dismissed by Judge Dalzell (and, hence, to "overrule" the affirmance of Judge Dalzell's decision issued by the Court of Appeals). This Court declines that invitation.

9. Petitioner's challenges stated in the Instant Petition are barred by the doctrine of res judicata. Pursuant to the doctrine of res judicata, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991). The purpose of res judicata doctrine is to avoid "relitigation of the same claims, expense to litigants and

inconsistent results." <u>Avins v. Moll</u>, 610 F. Supp. 308, 316 (D.C. Pa. 1984); <u>see</u> <u>also</u> <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979); <u>Jett v. Beech Interplex, Inc.</u>, 2004 U.S. Dist. LEXIS 13352, at * 2 (E.D. Pa. July 15, 2004) ("The purposes underlying the doctrine are to conserve judicial resources, establish certainty and respect for court judgments, and to protect the party that relies on prior adjudication from vexatious litigation"). The three prong test for the application of <u>res</u> <u>judicata</u> requires: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." <u>EEOC v. U.S.</u> <u>Steel Corp.</u>, 921 F.2d 489, 493 (3d Cir. 1990). Importantly, "res judicata will 'not be defeated by minor differences of form, parties or allegations' where the 'controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'" <u>Jett</u>, 2004 U.S. Dist. LEXIS 13352, at * 2. As noted <u>supra</u>, Petitioner now raises to this Court the very same challenges which Judge Dalzell already resolved in the <u>Caldwell-II</u>, when Judge Dalzell: (a) construed Petitioner's application as a Section 2241 petition; and (b) denied it on merits (and the Court of Appeals affirmed that

determination).[11]   Therefore, Petitioner's Instant Petition

will be dismissed as barred by the doctrine of <u>res

judicata</u>.[12]

10. Finally, the Court takes this opportunity to note its

concern with Petitioner's litigation tactics.  As the

_____

[11] In light of Petitioner's appellate challenges filed with
regard to <u>Caldwell-II</u>, there appears to be no doubt that
Petitioner both received and understood Judge Dalzell's decision.
Indeed, this Court cannot provide Petitioner with an explanation
(as to the invalidity of Petitioner's <u>Barden</u>-based challenges)
more thorough than that already provided to him by Judge Dalzell.

[12] Since Petitioner's <u>Caldwell-II</u> challenges were scattered
among Petitioner's original application to Judge Dalzell and his
motions for reconsideration, "additional factual findings, etc.,"
Petitioner's challenges raised in the Instant Petition correspond
to different documents filed by Petitioner in <u>Calkdwell-II</u> and to
different decisions issued by Judge Dalzell in <u>Caldwell-II</u>.  For
instance, Petitioner's assertion that the BOP refusal to follow
directives of state courts (as to federal sentences) or federal
courts' inability to transform state courts' directives (as to
federal sentences) into directives of federal courts is
unconstitutional and violates "full faith and credit" clause was
raised and resolved in <u>Caldwell-II</u> by means of one of such
Petitioner's motions.  The sole argument raised in the Instant
Petition which this Court could not immediately correspond to
Petitioner's submissions made in <u>Caldwell-II</u> is Petitioner's
seemingly newly-minted assertion that § 3621 contravenes the
principles of separation of powers because the BOP is granted, in
Petitioner's opinion, "too much" discretion under Section
3621(b).  However, this version of constitutional attack on
Section 3621 was already addressed and found facially invalid by
the Ninth Circuit in <u>Reynolds v. Thomas</u>, 603 F.3d 1144 (9th Cir.
2010) (relying on <u>Taylor v. Sawyer</u>, 284 F.3d 1143 (9th Cir.
2002), the Ninth Circuit's counterpart of <u>Barden</u>); <u>accord</u> <u>Pitts
v. Thornburgh</u>, 866 F.2d 1450, 1453 (D.C. Cir. 1989) (reflecting
on § 3621 and stating that "issues of prison management are, both
by reason of separation of powers and highly practical
considerations of judicial competence, peculiarly ill-suited to
judicial resolution" and "courts should be loath to substitute
their judgment for that of prison officials and administrators").

discussion provided above demonstrates, Petitioner had his initial round of <u>Barden</u>-based challenges dismissed by this Court in his <u>Caldwell-I</u> action, which included a denial of Petitioner's motion for reconsideration.  Yet, after the Court of Appeals affirmed this Court's <u>Caldwell-I</u> determination, Petitioner sought to obtain an order directing the EDPA to re-adjudicate, anew, this Court's determinations reached in <u>Caldwell-I</u>.  Petitioner has repeated the same litigation pattern in the case at bar: here, Petitioner had his second round of <u>Barden</u>-based challenges dismissed by Judge Dalzell in the <u>Caldwell-II</u> action, which too included denial of Petitioner's motions for reconsideration, affirmance by the Court of Appeals and the Court of Appeals' denial of rehearing.  And yet, as with regard to <u>Caldwell-I</u>, Petitioner is now requesting this Court to re-adjudicate these already adjudicated challenges;[13] simply put, "Petitioner seeks a fourth bite of this well-chewed apple."  <u>Toolasprashad v. Grondolsky</u>, 570 F. Supp. 2d 610, 645 (D.N.J. 2008).  Petitioner's repeated

---

[13] This Court, Judge Dalzell and the panels presiding over Petitioner's <u>Caldwell-I</u> and <u>Caldwell-II</u> appeals, fully understood Petitioner's displeasure with the determinations reached by the BOP with regard to his first and second rounds of <u>Barden</u> challenges.  However, Petitioner's displeasure does not render the BOP's actions a violation of Petitioner's rights.  Moreover, Petitioner's seemingly "forum shopping" endeavors cannot change the governing legal regime: this Court applies the same law as the one relied upon by Judge Dalzell and by the Court of Appeals.

attempts to re-litigate conclusively-resolved matters come
dangerously close to abusing the writ.  "The concept of
'abuse of the writ' is founded on the equitable nature of
habeas corpus. . . . Where a prisoner files a petition
raising grounds that were available but not relied upon in a
prior petition, or engages in other conduct that disentitles
him to the relief he seeks, the federal court may dismiss
the subsequent petition on the ground that the prisoner has
abused the writ."  Id. at 17-19.  The Court of Appeals
clarified the workings of the doctrine of abuse of writ as
follows: "When a prisoner files multiple petitions [seeking]
relief [in the form of a writ], the abuse of the writ
doctrine as set forth in 28 U.S.C. § 2244(a) may bar his
claims: No circuit or district judge shall be required to
entertain an application for [another writ] to inquire into
the detention of a person . . . if it appears that the [same
issue was resolved] by a judge or court of the United States
on a prior application for a writ of habeas corpus . . . ."
Furnari v. United States Parole Comm'n, 531 F.3d 241 (3d
Cir. 2008) (relying on Sanders v. United States, 373 U.S. 1,
9 (1963)).  This Court, therefore, strongly encourages
Petitioner to treat all his legal actions, be they initiated
in this District or in any other court, with utmost
seriousness and to avoid duplicative re-litigations of the

same challenges: since Petitioner's failure to heed to this

guidance might expose him to the measures tailored to

prevent abuse of writ.

11. For the foregoing reasons, the Petition will be dismissed as

barred by the doctrine of <u>res</u> <u>judicata</u>.  An appropriate

Order accompanies this Memorandum Opinion.


s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Dated: November 2, 2011